UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN W. COURTNEY, FRANCES T. LAX, LAWRENCE M. GREEN, and IRENE L. KORTAS, on behalf of themselves and others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| NEAL T. HALLERAN, et al. | ) ) |
| Defendants. | ) ) ) |

Case No. 02-C-6926

Judge Joan B. Gottschall

**MEMORANDUM OPINION AND ORDER**

In its September 14, 2004 Memorandum Opinion and Order (*Courtney v. Halleran*, No. 02C6926 (N.D. Ill. Sept. 14, 2004), the "September Order"), this court granted the respective motions to dismiss submitted by defendants Coast-to-Coast Financial Corp. ("CCFC"), along with several of CCFC's principals (with CCFC, collectively the "CCFC Defendants"); several of Superior Bank FSB's ("Superior") individual officers and administrators (the "Bank Defendants"); Superior's auditors, Ernst & Young LLP ("E&Y"); and the FDIC. The September Order provided relevant factual background and dismissed each of the five counts recited in plaintiffs' fourth amended complaint.

Subsequent to this dismissal, the parties have filed additional motions. Presently before the court are: (i) plaintiffs' motion for reconsideration; (ii) the CCFC Defendants and the Bank Defendants' joint motion for reconsideration; (iii) plaintiffs' motion for preliminary injunction; and (iv) plaintiffs' motion for joinder of Asworth Corporation ("Asworth"), the Federal Deposit Insurance Corporation in its capacity as receiver and the Office of Thrift Supervision ("OTS") as

necessary parties.

For the reasons described below, the court grants in part and denies in part plaintiffs' motion for reconsideration and denies plaintiffs' motion for preliminary injunction. The court reserves its rulings on the CCFC Defendants and Bank Defendants' joint motion for reconsideration and on plaintiffs' motion for joinder as explained herein.

**BACKGROUND**

As more fully described in the September Order, in 2001 after the FDIC took over Superior as receiver, the agency settled Superior's claims against CCFC's principals for $460 million (the "2001 Settlement"). As part of the 2001 Settlement, the FDIC agreed to assign to Asworth[1] 25% of any proceeds recovered by the FDIC from E&Y. In December 2004, the FDIC and E&Y agreed to a settlement wherein the FDIC agreed to a release of all claims against E&Y in exchange for $125 million (the "E&Y Settlement").

In accordance with the 2001 Settlement the FDIC plans to initiate payment to Asworth of the 25% due to them (minus the FDIC's legal fees and costs) from the E&Y Settlement.[2] At a hearing before the court on January 27, 2005, the FDIC indicated that, in light of the unresolved issues in this litigation, it had reached an agreement with Asworth that the FDIC would refrain from paying any

---

[1] Plaintiffs and the CCFC Defendants dispute who exactly will be receiving the money gleaned from the E&Y Settlement. Plaintiffs maintain that the CCFC Defendants will receive this money, while the CCFC Defendants assert that a non-party, Asworth, will. Asworth seems to share some principals with CCFC. In light of the court's denial of plaintiffs' requested injunction, it is not necessary for the court to make a finding on the identity of the actual recipient of the E&Y funds, but for purposes of convenience, the court refers to Asworth as the recipient in this order.

[2] The parties disagree as to the amount payable from the FDIC on account of the E&Y Settlement, but agree that the low end of the range is approximately $30 million, with plaintiffs claiming that the amount payable may be as much as $52.5 million.

amounts due on account of the E&Y Settlement until February 7, 2005.

ANALYSIS

I. PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs do not make clear under which Federal Rule of Civil Procedure ("FRCP") they bring their motion for reconsideration, but the court will analyze the motion under FRCP 60(b) because it was filed (on October 1, 2004) after the ten day period from the entry of judgment during which it could have been brought as a motion to alter or amend judgment under FRCP 59(e)[3]. Actions for reconsideration under FRCP 60(b) may be granted only for one of the six reasons specified by the rule, and are not to be used merely to correct erroneous applications of law. *Russell v. Delco Remy*, 51 F.3d 746, 749 (7th Cir. 1995).

A.  Reconsideration of Counts II and IV

Plaintiffs' motion first seeks reconsideration of the court's dismissal of count II (against CCFC and E&Y for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)) and count IV (against E&Y for knowingly aiding and abetting CCFC's RICO violations), which were dismissed because of the court's determination that plaintiffs lack standing to bring these claims. This aspect of plaintiffs' motion attempts to rehash arguments already considered by the court in issuing the September Order. Plaintiffs' primary argument for standing to bring counts II and IV was that plaintiffs were individually induced by misrepresentations of the CCFC Defendants and E&Y to deposit money in a failing institution and suffered harm as a result. This continues to be plaintiffs' primary argument on reconsideration, and plaintiffs do not offer any new factual or

---

[3] In fact, plaintiffs did not file their supplemental memorandum notifying the court of the key grounds for reconsideration (the fact of the E&Y Settlement) until December 30, 2004. This makes sense, given that the E&Y Settlement was not concluded until late December 2004.

legal bases for controverting the court's holding in the September Order that "[Plaintiffs'] injuries derive from the injury to Superior itself and, therefore, plaintiffs lack standing to bring a direct RICO claim." *Courtney v. Halleran*, No. 02C6926, 2004 WL 2095674, at *4. Accordingly, plaintiffs' motion for reconsideration of counts II and IV of its complaint is denied. *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (motion for reconsideration should be denied where arguments to be reconsidered were repeats of prior arguments).

### B. Reconsideration of Count V

Plaintiffs also request that the court reconsider the September Order's dismissal of count V as unripe. To recall, count V requests a declaratory judgment that the 2001 Settlement should be voided because the settlement would divert Superior's assets (in the form of E&Y Settlement proceeds) to CCFC in violation of the priority scheme for distribution of Superior's assets established by § 1821(d)(11)(A) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1811, *et seq.* ("FIRREA,"). The court dismissed count V because, at the time of the September Order, there was no actual or pending settlement that would cause E&Y funds to be distributed. Hence the danger of injury to plaintiffs was "not imminent and . . . contingent on future events that neither the court nor the parties can forecast." *Courtney*, at *5.

Now, the E&Y Settlement has been concluded, and payments from E&Y are imminent, making the issue of the legality of the distribution scheme agreed on in the 2001 Settlement ripe for consideration. The E&Y Settlement was not concluded until late December 2004, over three months after the entry of judgment dismissing plaintiffs' claims. Rule 60(b)(2) allows reconsideration where there is "newly discovered evidence which . . . could not have been discovered in time to move for a new trial under Rule 59(b)." FRCP 59(b) allows only ten days to move for a new trial, making

FRCP 60(b)(2) operative in this case.[4] The court notes that the CCFC Defendants concede that the conclusion of the E&Y Settlement renders count V ripe for decision. Thus, the court grants plaintiffs' motion to reconsider count V, and reinstates count V in this action.

## II. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs request that the court enjoin disbursal of funds to Asworth, which funds were received by the FDIC on account of the E&Y Settlement.

### A. Section 1821(j)'s Prohibition on Equitable Relief

Plaintiffs base their primary argument in support of injunctive relief on their contention that the 2001 Settlement's specification that Asworth is to receive 25% of money recovered by the FDIC as a result of the E&Y Settlement contradicts the priority of distributions spelled out in 12 U.S.C. § 1821(d)(11)(A). With respect to money the FDIC recovers by virtue of its control over a failed bank such as Superior, plaintiffs maintain that depositors must be paid in full before any party lower than depositors in the priority scheme, such as the CCFC Defendants (as represented by Asworth), may be paid anything. The CCFC Defendants and the FDIC respond (among other arguments) that plaintiffs' argument regarding the priority scheme is irrelevant because the court has no jurisdiction to grant the injunction sought by plaintiffs. Because the FDIC was acting pursuant to its enumerated powers as a conservator and receiver in reaching the 2001 Settlement, and will continue to do so when it honors the terms of the 2001 Settlement in disbursing funds received from E&Y, the court

---

[4] The Seventh Circuit has acknowledged "five prerequisites to a successful Rule 60(b)(2) motion: (1) the evidence was discovered following trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result." *Harris v. Owens-Corning Fiberglass Corp.*, 102 F.3d 1429, 1434 n3 (7th Cir. 1996). Each of these prerequisites is met here.

is precluded by 12 U.S.C. § 1821(j) from granting the injunction plaintiffs seek. The court agrees.

12 U.S.C. § 1821(j) explicitly prohibits judicial action interfering with actions taken by the FDIC in its capacity as conservator or receiver. Hence, if the FDIC is performing one of its statutory functions as conservator or receiver, this court cannot enjoin the FDIC's conduct.[5] *See Gross v. Bell Savings Holdings, Inc. Money Purchase Plan, et al.*, 974 F.2d 403, 408 (3rd Cir. 1992) (under § 1812(j), "the district court does not have the ability to enjoin the [FDIC] where the Corporation is colorably acting within its enumerated powers."); *Nat'l. Trust for Historic Preservation v. FDIC*, 21 F.3d 469, 472 (D.C. Cir. 1994) ("[G]iven the breadth of the statutory language, untempered by any persuasive legislative history pointing in a different direction, the statute [§ 1821(j)] would appear to bar a court from acting in virtually all circumstances.") (concurring opinion).

In reaching the 2001 Settlement, including its provision for the potential distribution of some of the proceeds from the E&Y Settlement to Asworth, the FDIC was acting pursuant to its explicit power as conservator or receiver of Superior to "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer." 12 U.S.C. § 1821(d)(2)(G)(i)(II). Superior's claims against E&Y (which were released by the E&Y Settlement) as well as proceeds from the E&Y Settlement are assets of Superior, over which the FDIC has control in its role as receiver. Reinforcing the FDIC's general power to transfer assets, FIRREA explicitly allows transfers of assets even to parties with potential liability in connection with an institution's failure if such transfer is part of a settlement. 12 U.S.C. § 1821(p)(3)(A) (FDIC may make otherwise prohibited transfers of assets where "the transfer of the asset . . . is part of the

---

[5] Section 1821(j) pertinently reads, ". . . no court may take any action . . . to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver."

resolution or settlement [of] 1 or more claims that have been or could have been asserted by the Corporation against the person"). In other words, the FDIC was acting in accordance with its statutory powers in settling claims, including the transfers of E&Y Settlement proceeds to Asworth under the 2001 Settlement. *See also Resolution Trust Corp. v. CedarMinn Bldg. Corp.*, 956 F.2d 1446, 1451 (8th Cir. 1992) (allowing RTC [and FDIC] to act on "permissible" interpretations of its powers under FIRREA).

Plaintiffs argue that *Adagio Investment Holding Ltd. v. FDIC*, 338 F. Supp. 2d 71 (D.D.C. 2004) supports their contention that FIRREA's priority distribution scheme trumps the FDIC's power to take actions that have the effect of reclassifying depositors' interests within that scheme. The court does not agree that the facts or holding of *Adagio* control this case. There, the FDIC swept depositor funds between accounts in a bank that the FDIC had taken over as receiver, and the FDIC could not "cite to any specific statutory basis for its actions." *Adagio*, 338 F. Supp at 82. In this case, the FDIC has acted according to its statutory power to transfer assets of Superior to Asworth, which authority to transfer even *Adagio* cites as an enumerated FDIC power. *Id.* at 81 n.18. Furthermore, while *Adagio* granted summary judgment to the plaintiffs, the court there acknowledged that under § 1821(j) it did not have authority to grant the equitable relief the plaintiffs requested. *Id.* at 75 n.7.

Because the court is precluded from enjoining distribution of the settlement proceeds derived from the E&Y Settlement, the court cannot grant the plaintiffs' requested injunction, regardless of the merits of plaintiffs' underlying claim. *281-300 Joint Venture v. Onion*, 938 F.2d 35, 39 (5th Cir. 1991) (Section 1821(j) precludes injunctive relief "regardless of [plaintiff's] likelihood of success on the underlying claims.") Thus, the plaintiffs' request for preliminary injunction is denied.

### C. Remaining Federal Claims

As stated in open court during its January 27, 2005 hearing, in light of the court's denial of their requested preliminary injunction, plaintiffs are to advise the court regarding what aspects of their FIRREA-related claims, if any, plaintiffs believe remain to be determined. Pursuant to Rule 65(a)(2), the court has the power to advance the merits of this dispute and enter a final judgment and would do so if the instant ruling disposes of all contested federal issues. Plaintiffs' brief is due to be filed and served within seven days of this order and defendants will have seven days after service of plaintiffs' brief to respond.

### III PLAINTIFFS' MOTION FOR JOINDER AND DEFENDANTS' MOTION FOR RECONSIDERATION

Plaintiffs have also moved under Rule 19 to join Asworth, the FDIC in its capacity as receiver of Superior and the OTS as parties needed for just adjudication, apparently on the grounds that these parties are needed to make complete relief possible. The court will rule on plaintiffs' motion for joinder and defendants' outstanding motion for reconsideration of plaintiff's state law claims after ruling on plaintiffs' request (or decision not to request) that the court retain jurisdiction to dispose of any unresolved federal issues.

ENTER:

/s/ Joan Gottschall
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 1, 2005